

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HENRY PEREZ, et al., on behalf of
themselves and others similarly situated,

          Plaintiffs,

- against -

THE CITY OF NEW YORK, BILL DE
BLASIO, in his official capacity as Mayor,
THE NEW YORK CITY DEPARTMENT
OF PARKS & RECREATION, and
MITCHELL J. SILVER, in his official
capacity as Commissioner,

          Defendants.
------------------------------------------------------------X

<u>OPINION AND ORDER</u>

12 Civ. 4914 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

        Plaintiffs, Associate Urban Park Rangers ("AUPRs") currently and previously employed by the New York City Department of Parks and Recreation, seek compensation under the Fair Labor Standards Act ("FLSA") for time spent donning and doffing their uniforms at the beginning and end of each work day. At the close of fact discovery, defendants moved for summary judgment on three grounds. *First*, defendants argue that the donning and doffing of AUPR uniforms is a non-compensable "preliminary or postliminary" activity. *Second*, defendants argue that the donning and doffing of AUPR uniforms is exempt from FLSA

liability under the "changing clothes" clause of section 203(o) of the Act. *Third*, defendants argue that even if plaintiffs' legal position is sound, time spent donning and doffing is *de minimus*. For the reasons set forth below, defendants' first argument prevails, and their motion is GRANTED.[1]

## I. BACKGROUND

The relevant facts are not dispute. *First*, plaintiffs are "required to wear a uniform during the performance of their job duties and responsibilities."[2] *Second*, in addition to wearing uniforms, plaintiffs are also required to don security equipment, including, *inter alia*, "a bullet proof vest and utility belt,"[3] as well as various items — such as handcuffs and mace — that "attach[] to the utility belt."[4] *Third*, changing into the full AUPR uniform, plus security equipment, takes a small but appreciable amount of time. Different plaintiffs testified to different exact amounts. But estimates range from 5-7 minutes — on the shorter end — to

---

[1] In so holding, this Court has no occasion to address defendants' other two arguments — both of which raise complicated questions under the FLSA.

[2] Defendants' 56.1 Statement of Undisputed Facts ("Def. 56.1"), ¶ 8. *Accord* Plaintiffs' Response to Defendants' 56.1 Statement of Undisputed Facts ("Pl. 56.1"), ¶ 8.

[3] Def. 56.1 ¶ 10.

[4] Pl. 56.1 ¶ 10. For a full list of the utility equipment that AUPRs don, see Uniform and Equipment Specifications and Regulations, Exhibit E to Def. 56.1.

upwards of 20 minutes — on the longer.[5]

## II.   APPLICABLE LAW

The FLSA authorizes employees to recover against employers that unlawfully withhold compensation.[6]  Under the Portal-to-Portal Act ("PPA"), however, compensation claims can only arise from employment obligations that are related to the "principal activity or activities" of employment.[7]  An employment obligation that is "preliminary to or postliminary to [an employee's] principal activity or activities" cannot give rise to an FLSA claim.[8]

To define the scope of the "preliminary or postliminary" exception, the Supreme Court has fashioned a two-part test.  Something is a "principal activity" of employment if it is both "integral and indispensable" to the job that an

---

[5]   *See* Def. 56.1 ¶¶ 12-13; Pl. 56.1 ¶¶ 12-13.  The main source of factual dispute in this case is whether plaintiffs are required to change into their uniforms at work, or whether they are permitted to do so at home.  According to plaintiffs, donning and doffing must occur at work.  Defendants disagree.  There has been extensive discovery on the question — without resolution.  *Compare* Def. 56.1 ¶¶ 14-28, *with* Pl. 56.1 ¶¶ 14-28.  For purposes of this Opinion, however, the dispute need not be resolved.  Where the donning and doffing occurred is immaterial to the FLSA analysis, as set forth below.

[6]   *See* 29 U.S.C. § 201 *et seq.*

[7]   29 U.S.C. § 254(a).

[8]   *Id.* § 254(a)(2).

employee is hired to perform.[9]  These elements are analytically distinct, and both must be satisfied for an FLSA claim to lie.

Indispensable "means 'necessary.'"[10] An activity is indispensable if the performance of one's job depends on its completion — if the activity "cannot be dispensed with, remitted, set aside, disregarded, or neglected."[11]  Integral, by contrast, "means [] 'essential to completeness.'"[12] An activity is integral if it is "*specifically* necessary to the completeness or integrity of the whole"[13] — if it relates to the core purpose of employment.  As the Second Circuit has explained, an activity "may be indispensable to [an employee's] principal activities without being integral."[14]  For example, an activity that an employer requires its employees to perform at the start of the workday — such as swiping a security badge — is

---

[9]     *Integrity Staffing Solutions v. Busk*, 135 S.Ct. 513, 517 (2014).  *Accord IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005).

[10]    *Gorman v. ConEd Corp.*, 488 F.3d 586, 593 (2d Cir. 2007).

[11]    *Integrity Staffing*, 135 S.Ct. at 517 (internal citations omitted).

[12]    *Gorman*, 488 F.3d at 593.

[13]    *Integrity Staffing*, 135 S.Ct. at 517 (emphasis in original) (internal citations omitted).

[14]    *Gorman*, 488 F.3d at 594.

indispensable insofar as it is mandatory.[15] But that, alone, does not make the activity integral to the employee's job.[16] Indeed, the purpose of the PPA was to ensure that *not* all employment obligations give rise to FLSA liability.[17] This is why neither the mandatory nature of the activity, nor the fact that "the activity is [done] for the benefit of the employer," is an appropriate metric for determining whether an activity is "integral" to employment.[18] Rather, the metric is whether an activity is "an intrinsic element" of an employee's job.[19]

In *Steiner v. Mitchell*,[20] the Supreme Court held that battery plant employees were entitled to compensation for time spent donning and doffing

---

[15] *See Haight v. The Wackenhut Corp.*, 692 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2010).

[16] *See id.* at 344 ("In response to [] plaintiffs' argument that their employer required [donning security equipment], the [Second Circuit] concluded that . . . [the analysis] focus[es] on whether the activities performed by plaintiff are *integral*, not just indispensable, to their principal activities.") (emphasis in original). *See also Gorman*, 488 F.3d at 594 (explaining that mandatory security measures "do not [] become principal activities of [] employment" simply because they are necessary).

[17] *See Integrity Staffing*, 135 S.Ct. at 519 ("If the ['integral and indispensable'] test could be satisfied merely by the fact than an employer required an activity, it would sweep into 'principal activities' the very activities that the [PPA] was designed to addressed.").

[18] *Id.*

[19] *Id.*

[20] 350 U.S. 247 (1956).

protective gear, due to the especially hazardous nature of their work environment. In so holding, the Court distinguished between (1) donning and doffing protective gear designed to mitigate the unique hazards of a work environment, and (2) the act of "changing clothes and showering under normal conditions" — *i.e.*, not uniquely hazardous — "conditions."[21]

Against this backdrop, the Second Circuit has concluded that "[t]he donning and doffing of [] *generic* protective gear is not different in kind from 'changing clothes and showering under normal conditions,' which, under *Steiner*, are not covered by the FLSA."[22]  According to the Second Circuit, such "generic protective gear" includes (but is not limited to) "helmet[s], safety glasses, and steel-toed boots."[23]  Furthermore, two trial court opinions from this District have also understood "generic protective gear" to include the uniforms and equipment donned by security workers.  In *Haight v. The Wackenhut Corp.*,[24] Judge Stephen Robinson reasoned that there was no meaningful difference between "helmet[s], safety glasses, and steel-toed boots," and the "gun holster [and] inclement weather

---

[21]  *Id.* at 249.

[22]  *Gorman*, 488 F.3d at 594 (emphasis added).

[23]  *Id.*

[24]  692 F. Supp. 2d 339 (S.D.N.Y. 2010)

gear" that security officers at a nuclear facility were required to don.[25]  Similarly, in *Edwards v. City of New York*,[26] Judge Denise Cote held — in response to an FLSA claim almost identical to this one, brought by corrections officers rather than AUPRs — that "[t]here is no basis to distinguish between the 'helmet, safety glasses, and steel-toed boots' found to be 'generic protective gear' in *Gorman* and the uniform, utility belt, and slash resistant vest" that corrections officers were required to wear.[27]

### III.  STANDARD OF REVIEW

"Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"[28] Accordingly, summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any

---

[25]   *Id.* at 345.

[26]   No. 08 Civ. 3134, 2011 WL 3837130 (Aug. 29, 2011).

[27]   *Id.* at *7.

[28]   *Whethers v. Nassau Healthcare Corp.*, No. 13 Civ. 2991, 2014 WL 4637215, at *1 (2d Cir. Sept. 18, 2014) (*citing Matsushida v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

material fact and . . . the movant is entitled to judgment as a matter of law."[29]

## IV. DISCUSSION

There is no dispute that, in the Second Circuit, "[t]he donning and doffing of [] generic protective gear is . . . not covered by the FLSA."[30]  With that premise in mind, this case presents two questions.  *First*, is the preliminary activity here — changing into and out of Parks Department uniforms, including security equipment — tantamount to "donning and doffing of [] generic protective gear"?  *Second*, if the preliminary activity here *is* tantamount to "donning and doffing of [] generic protective gear," does the fact that it takes place on the employer's premises revive plaintiffs' FLSA claim?

### A. The Donning and Doffing in this Case Involves "Generic Protective Gear"

*Haight* and *Edwards* are on all fours with this case.  There, as here, plaintiffs argued that wearing uniforms equipped with basic security equipment was "integral" to their job responsibilities.  And in both cases, the argument was rejected for the same reason:  the court held that the security equipment fell within the category of "generic protective gear" articulated in *Gorman*, whose donning

---

[29]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (internal citations omitted).

[30]   *Gorman*, 488 F.3d at 594.  *Accord* Pl. Opp. at 22.

and doffing is non-compensable under the FLSA.

*Haight* and *Edwards* are persuasive. In accordance with the goals of the PPA, the Second Circuit clearly intended the phrase "generic protective gear" to be broadly construed. And if security equipment is not integral to the primary responsibilities of security guards, it follows *a fortiori* that the same equipment is not integral to the primary responsibilities of AUPRs. Plaintiffs have only one rejoinder to this point. Namely, because defendants have failed to properly "*identify* [AUPRs'] principal activities,"[31] plaintiffs argue that it is impossible for them — or, apparently, for this Court — to "analyze in a meaningful way whether AUPRs' donning [and] doffing of the Parks Department uniform, including equipment, is integral . . . [to those] activities."[32]

This argument inverts the burden of proof. Given the Second Circuit's crystal-clear statement that "[t]he donning and doffing of [] generic protective gear is . . . not covered by the FLSA,"[33] as well as the factual similarity between this case and *Haight* and *Edwards*, it is plaintiffs' burden to demonstrate that their security equipment is *not* generic protective gear — not the other way

---

[31]   Plaintiffs' Memorandum of Law in Response to Defendants' Motion for Summary Judgment ("Pl. Opp."), at 18.

[32]   *Id.*

[33]   *Gorman*, 488 F.3d at 594.

around. According to plaintiffs, their responsibilities as AUPRs include, *inter alia*, "providing assistance to the public in New York City parks and pools," giving "aid to those persons who may have suffered an injury [or] been victimized by a crime," "advising persons of their legal obligations," and, if need be, "making arrests."[34]

Even cast in the light most favorable to plaintiffs, however, this list merely underscores the deficiency of their legal position. The donning and doffing of uniforms and security equipment is not integral to any of these tasks. And the donning and doffing of uniforms and security equipment is certainly not *more integral* to any of these tasks than it is to the tasks performed by security guards. Indeed, the only task that plausibly bears an integral relationship to security equipment — "making arrests" — was also before the courts in *Haight* and *Edwards*. It was unavailing there, and it is unavailing here.

### B. That the Donning and Doffing Occurred at Work Is Irrelevant

Plaintiffs try to distinguish *Haight* and *Edwards* on the grounds that those cases, unlike this one, "did not involve donning [and] doffing at the workplace."[35] But this argument is similarly unavailaing.[36] An activity that is not

---

[34] Pl. Opp. at 18.

[35] *Id.* at 23.

[36] As noted above, this issue is in dispute. For the purpose of assessing the viability of plaintiffs' legal position, I adopt their version of the facts *arguendo*.

otherwise integral to an employee's job responsibilities does not become integral simply because it must be done at a particular place. In *Steiner*, when the Supreme Court distinguished between (1) the donning of specialized security gear and (2) "changing clothes and showering under normal conditions," it was not because the first activity occurred at work, while the second occurred at home. In fact, by using the example of "changing clothes and showering under normal conditions" — both workplace activities — the Court's point was precisely that certain activities are non-compensable under the FLSA *despite* occurring at work. In *Gorman*, the Second Circuit adopted the logic of *Steiner* in full; that was how it justified the distinction between specialized and generic protective gear. Plaintiffs have offered no reason to think — much less any case law to demonstrate — that the *Gorman* court meant to disturb *Steiner*'s core holding that certain preliminary and postliminary activities are non-compensable regardless of where they occur.

In support of their view that the FLSA recognizes a distinction between activities that take place at home and those that take place at work, plaintiffs invoke an advisory regulation from the Department of Labor ("DOL Regulation"), which offers the following gloss on the "integral and indispensable" requirement:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, *changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity*. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity.[37]

According to plaintiffs, the italicized language establishes that if "an employer requires that a uniform (including equipment) be put on at the workplace . . . [then] donning and doffing is compensable."[38]

Plaintiffs' reliance on the DOL Regulation is misplaced for two reasons. *First*, the logic of the DOL Regulation is flatly at odds with the logic of the relevant case law. The first sentence of the cited portion defines an "integral" task as one that is "indispensable" to the performance of a principal activity. But this definition — by casting integral *in terms of* indispensability — collapses the dichotomy adopted by the Second Circuit and the Supreme Court to analyze FLSA cases. This Court is bound by the precedent of higher courts, not by the dictates of

---

[37] 29 C.F.R. § 790.8(c) (emphasis added).

[38] Pl. Opp. at 20 (emphasis omitted).

an advisory regulation.[39]

*Second*, even if the DOL Regulation *did* bind this Court, its language does not support the distinction that plaintiffs seek to draw. Read holistically, the point of the regulation is that the donning and doffing of "certain clothes" is compensable insofar as "an employee . . . cannot perform his principal activities without putting on [those] clothes," but *not* compensable "if changing clothes is merely a convenience to the employee and not directly related to his principal activities."[40] This, however, is just a different way of articulating what the case law makes clear: that the donning and doffing of clothes is compensable if it is integral, and not compensable if not. To establish this distinction, the regulation sets out a hypothetical that *assumes* that employees of a chemical plant would change into and out of their work clothes "on the employer's premises."[41] But that aspect of the hypothetical — that it envisions employees changing at work — is

---

[39] As the Supreme Court has explained, "[agency] interpretations contained in policy statements, agency manuals, and enforcement guidelines" — like the DOL Regulation here — "lack the force of law [and] do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Instead, such materials "are entitled to respect . . . but only to the extent that [they] have the power to persuade." *Id.* (internal citations omitted). In other words, this Court is free to look to the DOL Regulation for guidance, but it has no binding effect.

[40] 29 C.F.R. § 790.8(c).

[41] *Id.*

irrelevant to the larger point.[42]  The point is that donning and doffing is only compensable if the clothing in question is integral to an employee's primary job responsibilities.

When all is said and done, plaintiffs' argument about the location of donning and doffing comes back to a simple — and sympathetic — proposition. Being forced to change at work adds time to plaintiffs' workday; so they should be compensated. Yet this is exactly the type of claim that Congress, in passing the PPA, sought to foreclose. Preliminary and postliminary activities add time to the workday by their very nature. Nonetheless, the PPA shields those activities from FLSA liability — and in doing so, it requires plaintiffs to show *more* than just (1) "that an employer require[s] an activity," or the (2) that "[an] activity is for the

---

[42]  The structure of the DOL Regulation bolsters this point. It offers two examples that yield different results — and that difference highlights the variables that govern FLSA claims. Accordingly, if the DOL Regulation was trying to emphasize the importance of *where* donning and doffing occurs, one would expect location to appear as a variable in *both* examples. But that is not the case. As drafted, only the first example contains a reference to location. Namely, "[i]f an employee in a chemical plant [] cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity." *Id.* The second example merely states — without mentioning location — that "if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be [] a "preliminary" or "postliminary" activity." *Id.* Put slightly different, it is easy to imagine an alternative version of the regulation that drops the reference to "on the employer's premises" *entirely*, but nonetheless retains the same core meaning. This casts serious doubt on plaintiffs' reading of the "on the employer's premises" clause.

benefit of the employer."[43] To sustain a compensation claim under the FLSA, an activity must be "integral" to the core purpose of employment. Here, that standard is not met. Plaintiffs' claim fails as a matter of law. The Clerk of the Court is directed to close this motion (Dkt. No. 146) and close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 15, 2015

---

[43]     *Integrity Staffing*, 135 S.Ct. at 519.

- Appearances -

**For Plaintiffs:**

Amelia K. Tuminaro, Esq.
James M. Reif, Esq.
Jane Chung, Esq.
Gladstein Reif and Meginniss
817 Broadway
New York, NY 10003
(212) 228-7727

Kenneth A. Falk, Esq.
Kenneth Falk, Attorney at Law
171 Madison Avenue Ste. 1002
New York, NY 10016
(212) 366-4600

Jesse D. Gribben, Esq.
Steven E. Sykes, Esq.
District Council 37, AFSCME, AFL-CIO
125 Barclay Street
New York, NY 10007
(212) 815-1450

**For Defendants:**

Asad Rizvi
Andrea M. O'Connor
Kathryn E. Martin
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-6838

Eamonn F. Foley, Esq.
New York City Transit Authority

130 Livingston Street
Brooklyn, NY 11201
(718) 694-3905