UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
HENRY PEREZ, BASELICE RALPH, JUAN BAYRON, :
JERRY CORDERO, RONALD EASON, DONALD       :
KOONCE, JOSEPH ORO, RUBEN RIOS, JR., PEDRO :
ROSADO, DEREK G. WALTHER, and ELIZABETH   :
KAY BESOM, on behalf of themselves and others :
similarly situated,                                               :
                                                                  :
                                        Plaintiffs,               :
                                                                  :
                        -v-                                       :
                                                                  :
THE CITY OF NEW YORK, MAYOR BILL DE         :
BLASIO, and VERONICA WHITE, in her official  :
capacity as Commissioner of the Department of Parks & :
Recreation,                                                       :
                                                                  :
                                        Defendants.              :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED:  9-27-17

12 Civ. 4914 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Before the Court is defendants' motion for partial summary judgment in this Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, case, following the Second Circuit's reversal

of a prior grant of summary judgment in favor of defendants and the remand and random

reassignment of this case to this Court.

Plaintiffs are current and former Associate Urban Park Rangers ("AUPRs") employed by

New York City. They brought this lawsuit seeking recovery of unpaid wages they allege are due

to them based on alleged lapses in defendants' payment practices and policies. Plaintiffs' main

claim is that defendants did not pay them for the time they spent changing into, or "donning,"

and changing out of, or "doffing," their uniforms and associated equipment before and after their

work shifts. Plaintiffs also allege that defendants violated the FLSA in three other ways: by (1)

not paying them for compensable work plaintiffs undertook during their lunch breaks; (2) giving

them only one hour, instead of an hour and a half, of compensatory leave time for each hour of overtime work; and (3) incorrectly calculating pay for certain overtime work, in that plaintiffs allege that the overtime-pay methodology used to compensate plaintiffs who had accumulated 480 hours of compensatory leave shortchanged plaintiffs.

Defendants now move for partial summary judgment under Federal Rule of Civil Procedure 56.  As to all claims, defendants argue that those claims that arose outside of FLSA's two-year statute of limitations—or, for willful violations, FLSA's three-year statute of limitations—are time barred, and that equitable tolling is not available to plaintiffs.  As to plaintiffs' donning and doffing claims, defendants argue that time spent donning and doffing is not compensable under the FLSA because the history of the parties' collective bargaining makes non-payment for such functions a "custom or practice" that is properly non-compensable under § 203(o) of the FLSA.  Finally, defendants argue that plaintiffs cannot claim compensation for hours they claim to have worked but did not adequately report to defendants.

For the following reasons, defendants' motion is granted in part and denied in part.

## I.     Background

### A.     Factual Background[1]

---

[1] The Court draws its account of the underlying facts from the parties' respective submissions on defendants' motion for partial summary judgment, including defendants' Local Civil Rule 56.1 statement of undisputed material facts, Dkt. 193 ("Def. 56.1"); plaintiffs' response, Dkt. 199 ("Pl. 56.1"); the declaration of Andrea O'Connor submitted in support of defendants' motion for partial summary judgment, Dkt. 192 ("O'Connor Decl."), and its attached exhibits; the first and second declarations of James Reif in opposition to defendants' motions for partial summary judgment, Dkt. 155 ("Reif Decl."), Dkt. 197 ("Second Reif Decl."), and the declaration of Mark Heron in opposition to defendants' motion for partial summary judgment, Dkt. 198 ("Heron Decl.").  When the Court cites to either defendants' Local Civil Rule 56.1 statement or plaintiffs' response, it does so for facts that are undisputed or substantively undisputed by plaintiffs.  The Court cites to plaintiffs' Second Amended Complaint, Dkt. 103 ("SAC"), the operative complaint in this case, as background.

Many facts material to this motion are not in genuine dispute.

This action is brought by current and former AUPRs—the named plaintiffs and roughly 69 opt-in plaintiffs, Def. 56.1 ¶ 2—on behalf of themselves and others similarly situated for recovery of wages allegedly owed to them under the FLSA.  AUPRs are employed by the New York City Department of Parks & Recreation (the "Parks Department") to perform various public safety duties, such as providing directions and information to users of New York City's parks and pools, enforcing park rules and regulations, assisting people involved in accidents or who may be the victims of unlawful conduct, arranging medical care for people in need, undertaking crowd-control functions at special events held in the parks, providing safety and educational information to members of the public, and issuing summonses or arresting persons suspected of committing unlawful conduct, among other duties.  The AUPR position is the second lowest ranking park ranger title.  It ranks above only the Urban Park Ranger ("UPR") title.  SAC ¶ 15.  Plaintiffs, while working as AUPRs, reported to and worked under the direction of a Captain who was in charge of the command to which a particular plaintiff was assigned.  *Id.* ¶ 16.

AUPRs are required to wear a uniform while performing their job duties and responsibilities.  Def. 56.1 ¶ 8.  The uniform and equipment resemble a typical park ranger outfit and gear, and includes olive drab pants, "Smokey the Bear" style hats, a "Sam Brown" leather belt, Parks Department insignia and patches, bullet proof vest, a hip pouch, a utility belt with a memo book, handcuffs, mace and mace holster, flashlight, watch, baton, radio, and other clothing and equipment.  *See id.* ¶ 9; Pl. 56.1 ¶ 9; O'Connor Decl., Ex. E.  While the precise amount of time it takes plaintiffs to don and doff this clothing and equipment is in dispute,

plaintiffs have estimated earlier in this litigation that such time can range from roughly five minutes to 30 minutes.

Until March 31, 2013, plaintiffs were designated by defendants as exempt from coverage under the FLSA.  On that date, the Parks Department reclassified them as employees covered by the FLSA.  Def. 56.1 ¶ 7.  During all relevant times, plaintiffs were covered by the terms of collective bargaining agreements ("CBAs") in place between plaintiffs, their union, and the City of New York (the "City").  *Id.* ¶ 6.  These CBAs entitled plaintiffs to overtime compensation. *Id.*; Pl. 56.1 ¶ 6.  Plaintiffs' work schedule is based upon a 40-hour work week.  Def. 56.1 ¶ 5.

As to donning and doffing, at all relevant times, plaintiffs claim the governing CBAs did not entitle them to compensation for time spent donning and doffing and that they never received compensation for time spent donning and doffing, a claim defendants do not appear to dispute. *See* Def. 56.1 ¶¶ 6, 11–14; Pl. 56.1 ¶ 6.  From 1995 to the present, no CBA entered into between plaintiffs or their union and the City has contained a provision for compensation for time spent on donning and doffing, Def. 56.1 ¶ 11, and this topic never arose during collective bargaining negotiations, *id.* ¶ 12.  Similarly, from 1995 to the present, no AUPR made a request to his or her union that the topic of receiving compensation for time spent donning and doffing be raised in collective bargaining negotiations.  *Id.* ¶ 13.  In 2015, the union representing AUPRs negotiated a new contract with the City, during which there were 10–12 bargaining meetings for the new contract.  In none of those sessions was the topic of compensating AUPRs for donning and doffing raised, either orally or in writing.  *Id.* ¶ 14.

As to the methods AUPRs used to record their time worked, certain facts are undisputed. Since 2011, all AUPRs used an electronic, internet-based system called "CityTime" to record the hours they worked, under which they could electronically submit their timesheets for approval.

4

*Id.* ¶¶ 15–16.  Before that system was implemented, overtime compensation requests were submitted via paper forms; the Parks Department required AUPRs to maintain paper timecards recording their time.  *Id.* ¶¶ 21–22.  After an AUPR submitted a request for overtime, the AUPR's supervisor would then have to approve or deny the request.  *Id.* ¶ 19.

Many other facts as to plaintiffs' recordation of their time and overtime are disputed. Two examples suffice.  First, while defendants claim that at all relevant times, AUPRs could request overtime compensation for any time in excess of his or her regularly scheduled tour, whether performed before or after the tour or during a meal break, plaintiffs claim that Parks Department supervisors repeatedly discouraged or prohibited them from requesting overtime compensation for work undertaken outside their tour.  Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23.  Second, while a Parks Department supervisor, Captain Benne McCants, testified that an AUPR who worked before or after the start or end of his or her regularly scheduled tour would request and be compensated for that overtime work, Def. 56.1 ¶ 30, McCants testified that he was sure that AUPRs he supervised did not request overtime for work performed outside of the time of their scheduled tour, Pl. 56.1 ¶ 30.

### B.   Procedural Background

On June 22, 2012, plaintiffs filed the original complaint.  Dkt. 1.  This case was initially assigned to the Honorable Alison J. Nathan.  On August 9, 2012, defendants filed an answer. Dkt. 44.  On October 11, 2012, plaintiffs filed an amended complaint, Dkt. 73.  On November 13, 2012, defendants filed a new answer.  Dkt. 75.

On April 1, 2013, plaintiffs filed the SAC, the operative complaint today.  Dkt. 103.  On April 10, 2013, defendants filed an answer to the SAC.  Dkt. 104.  After discovery ended, defendants filed a motion for partial summary judgment on several grounds.  On December 8,

2014, after defendants' motion was fully briefed, this case was reassigned to the Honorable Shira A. Scheindlin.

On January 15, 2015, Judge Scheindlin granted summary judgment to defendants on the ground that plaintiffs' donning and doffing activities were not "integral" to the core purpose of their employment as AUPRs.  Dkt. 170 (*Perez v. City of New York*, No. 12 Civ. 4914 (SAS), 2015 WL 424394 (S.D.N.Y. Jan. 15, 2015)).  Although defendants had only moved for partial summary judgment, Judge Scheindlin ordered the case closed.  She did not reach any of the other grounds asserted for partial summary judgment.  *Id.*  On January 16, 2015, the Clerk of Court entered judgment in favor of defendants.  Dkt. 171.

On February 3, 2015, plaintiffs filed a notice of appeal of the grant of partial summary judgment and the closing of their case.  Dkt. 172.  On August 2, 2016, the United States Court of Appeals for the Second Circuit issued an opinion vacating and remanding the grant of partial summary judgment and reinstated plaintiffs' case.  Dkt. 173 (*Perez v. City of New York*, 832 F.3d 120 (2d Cir. 2016)).  On August 18, 2016, this case, now on remand and Judge Scheindlin having retired from the bench in the interim, was randomly reassigned to this Court.  Dkt. 175. On August 23, 2016, the Second Circuit issued its mandate.  Dkt. 177.

On September 23, 2016, the Court held a case management conference, Dkt. 180, and adopted a schedule for the partial summary judgment motion that defendants sought to make. The Court also reopened discovery until October 21, 2016, for the limited purpose of exploring an issue highlighted by the Second Circuit's decision remanding the case: whether compensation for plaintiffs' time spent donning and doffing had been ever raised in collective bargaining negotiations.  The parties conducted two additional depositions.  *See* Dkts. 180, 190.

On September 27, 2016, the parties filed a joint letter memorializing an area of discussion at the case management conference.  Dkt. 185.  In the joint letter, they agreed that, because there has not been any intervening changes of the relevant payment practices at issue in this case, the Court's resolution of defendants' anticipated partial summary judgment motion should govern plaintiffs' claim of liability not merely to the date of the SAC but also through the date of the Court's decision.  *Id.*

On November 22, 2016, defendants filed their motion for partial summary judgment, Dkt. 191, and, in support, included the O'Connor Declaration (O'Connor Decl.), Dkt. 192, a Local Civil Rule Rule 56.1 statement (Def. 56.1), Dkt. 193, and a memorandum of law, Dkt. 194.  On December 30, 2016, plaintiffs filed a memorandum of law in opposition to defendants' motion. Dkt. 200.  Plaintiffs also filed, in support of their opposition, the second Reif Declaration (Second Reif Decl.), Dkt. 197, the Heron Declaration (Heron Decl.), Dkt. 198, and their response to defendants' Local Civil Rule 56.1 statement (Pl. 56.1), Dkt. 199.  On January 19, 2017, defendants filed a reply.  Dkt. 204.  On June 1, 2017, the Court heard argument.  *See* Dkt. 206.

## II.    Standard of Review

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment." *Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation

marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by

"citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also*

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

248 (1986). In determining whether there are genuine issues of material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation

marks omitted).

## III.    Discussion

### A.    Background to the Present Motion

The SAC brings six FLSA claims. These are:

(1)    *Overtime:* for failing to compensate plaintiffs at the overtime premium rate of 1.5

times plaintiffs' regular rate of pay, or with 1.5 hours of compensatory time for each hour of

overtime worked, in violation of 29 U.S.C. §§ 207(a)(1), 207(o)(1). SAC ¶¶ 26–28.

(2)    *Donning:* for failing to compensate plaintiffs for activities worked immediately

before their regularly scheduled shifts—primarily, donning—at the overtime premium rate of

pay or compensatory time, in violation of 29 U.S.C. §§ 207(a)(1), 207(o)(1). SAC ¶¶ 29–31.

(3)   *Doffing:*  for failing to compensate plaintiffs for activities worked immediately following the end of their regularly scheduled shifts—primarily, doffing—at the overtime premium rate of pay or compensatory time, in violation of 29 U.S.C. §§ 207(a)(1), 207(o)(1). SAC ¶¶ 32–34.

(4)   *Meal breaks:*  for failing to compensate plaintiffs for work done entirely or predominantly during their meal breaks at the overtime premium rate of pay or compensatory time, in violation of 29 U.S.C. §§ 207(a)(1), 207(o)(1).  SAC ¶¶ 35–37.

(5)   *Overtime—for those with 480-plus hours accrued compensatory time:*  for those plaintiffs who had accrued more than 480 hours of compensatory time, compensating them with additional compensatory time instead of with pay at the overtime premium rate, in violation of 29 U.S.C. §§ 207(o)(3)(A) and 207(a)(1).  SAC ¶¶ 38–41.

(6)   *Minimum wage*s: for failing to pay plaintiffs the minimum wage as required between September 1, 1997 and July 23, 2007, in violation of 29 U.S.C. § 206(a)(1).  SAC ¶¶ 42–45.

And, as to each claim, plaintiffs allege that defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

Defendants' initial motion for partial summary judgment implicated only a subset of these claims.

First, as to the donning and doffing claims, defendants argued that such activity is not compensable under the FLSA for three separate reasons—because (1) these activities were not "integral and indispensable" to the plaintiffs' principal work activities during their shifts, as required by the caselaw interpreting 29 U.S.C. § 254(a)(1), which requires employees to be compensated for "the principal activity or activities which [an] employee is employed to

9

perform"; (2) the time spent donning and doffing is *de minimis*; and (3) the "time spent in changing clothes . . . at the beginning or end of each workday" was excluded "by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee," 29 U.S.C. § 203(o).

    Second, as to the portions of any claim covering work performed before more than two years before plaintiffs brought this lawsuit, defendants argued that such claims are barred by the FLSA's two-year limitations period for non-willful violations.

    Third, as to overtime claims based on time allegedly worked or after a shift or during a meal break, defendants argued that such claims are barred because plaintiffs did not properly report this work to defendants.

    Fourth, defendants argued that the Parks Department, then a defendant, is not a suable entity.

    Defendants' motion thus did not seek to disturb plaintiffs' minimum wage claim or their claim that plaintiffs were denied proper overtime pay after having accrued 480 hours or more of compensatory time.

    In granting defendants' motion for partial summary judgment, Judge Scheindlin only addressed the first summary judgment ground: whether the donning and doffing of plaintiffs' uniforms and equipment was compensable under the FLSA as being "integral and indispensable" to plaintiffs' principal work activities.  She stated that the other issues raised by defendants' motion "raise complicated questions under the FLSA."  *See* Dkt. 170 at 2 n.1 (*Perez*, 2015 WL 424394, at *1 n.1).  As to the donning and doffing claims, Judge Scheindlin held that these activities were not integral and indispensable to plaintiffs' principal work activities as a matter of

law and was thus were not compensable under the FLSA.  She granted summary judgment to defendants on that basis and dismissed the entire case.

On appeal, the Second Circuit overruled that decision.  It held that a reasonable factfinder could find that plaintiffs' donning and doffing of their uniforms was integral and indispensable to their principal work activities as AUPRs, and that defendants were thus not entitled to judgment as a matter of law on those claims on that basis.  The Second Circuit further directed the Court, on remand, to address defendants' other arguments for partial summary judgment in the first instance.  It added:  "Absent another appeal or additional motions by the parties that dispose of the action in its entirety, the case should then proceed to trial."  *Perez*, 832 F.3d at 123.

Defendants' present motion for partial summary judgment renews the arguments that Judge Scheindlin did not address.[2]  The Court considers them now.[3]

### B.    Statute of Limitations

Defendants argue that plaintiffs' claims involving conduct more than two years before the date plaintiffs filed this lawsuit (June 22, 2012) are time barred.  Opposing this motion, plaintiffs make two arguments:  first, that the FLSA's three-year statute of limitations for willful violations is available, and, second, that application of the statute of limitations should be equitably tolled.

---

[2] Defendants abandoned one argument they made previously in their first motion for partial summary judgment, that the donning and doffing in this case was non-compensable under the FLSA as *de minimis*.

[3] Plaintiffs' briefs did not address the motion for summary judgment on claims against the Parks Department.  At argument, plaintiffs agreed to withdraw those claims, and the Court thereupon dismissed the Parks Department as a defendant.  As a department of the City of New York, the Parks Department is not a suable entity:  § 396 of the New York City Charter mandates that all actions for the recovery of penalties for the violation of any law must be brought against the City and not city agencies, unless otherwise permitted by law.  This provision "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."  *Ximines v. George Wingate High School*, 516 F.3d 156, 160 (2d Cir. 2008) (citation omitted).

The Court holds that equitable tolling is not justified here but that disputes of fact prevent the Court from resolving whether the alleged violations, if proven, were willful.  That issue is therefore left to the jury.

### 1.  Willfulness

Claims under the FLSA are subject to a two-year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  The limitations period is triggered by the date when a complaint is filed except in the case of a collective action, in which case the limitations period, for each individual plaintiff not named in the complaint and who did not then file a written consent form, commences on the date when that plaintiff's written consent form for joining the action is filed.  29 U.S.C. §§ 255–56; *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("In a collective action suit such as this, the statute of limitations period continues to run with respect to potential plaintiff's collection action claim until that plaintiff files the written consent form opting into the suit.").

Although the FLSA does not define willfulness, the cases applying it instruct that "an employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted); *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–35 (1988).  "[M]ere negligence" or unreasonableness on the employer's part is not sufficient to establish a willful violation.  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).  It is not enough to prove that the defendant "'should have known' it was violating the law.  'Should have known' implies a negligence or 'reasonable person' standard.  Reckless disregard, in contrast, involves actual knowledge of a legal requirement, and deliberate

disregard of the risk that one is in violation." *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005).

The employee plaintiff bears the burden of demonstrating willfulness. *Young*, 586 F.3d at 207. Overall, "[a]lthough [a defendant's] willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013).

On defendants' present motion, on which the Court must draw all inferences in favor of plaintiffs as the non-movants, the Court finds that disputes of fact prevent it from determining, as a matter of law, that a reasonable factfinder could not find defendants' alleged violations of the FLSA willful. To be sure, as defendants note, there is no record evidence, such as admissions or confessional emails, that establishes defendants actually knew that their compensation of AUPRs violated the FLSA. But the record evidence would permit a finding of reckless disregard of the risk that the pay arrangements at issue violated the statute.

Plaintiffs' theory of willfulness is that defendants acted with reckless disregard when they long classified AUPRs as exempt from the FLSA. Until March 31, 2013, when they reclassified plaintiffs, defendants treated AUPRs as falling within 29 U.S.C. § 213(a)(1), which exempts from the FLSA's minimum wage and overtime obligations, *inter alia*, "any employee employed in a bona fide executive, administrative, or professional capacity." Regulations promulgated by the Secretary of Labor, however, limit the scope of this exemption. It "do[es] not apply to . . . park rangers . . . and similar employees, regardless of rank of pay level, who perform work such as rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law . . . pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals . . . preparing investigative

reports; or other similar work."  29 C.F.R. § 541.3(b)(1).  These regulations state that these employees should not be treated as exempt because, among other reasons, "their primary duty is not management of the enterprise in which the employee is employed," and elaborate that simply because such an employee "also directs the work of other employees" in the course of his or her regular job responsibilities does not qualify that employee for exemption.  *Id.* § 541.3(b)(2) (explaining that "park rangers" and other similar employees are not exempt as "executive employees"); *see also* §§ 541.3(b)(3)–(4) (explaining that "park rangers" and other similar employees are not exempt as "administrative employees" or "professionals," respectively).  Plaintiffs argue that AUPRs' job duties track these specifications, such that the exemption clearly does not apply.

Further, plaintiffs note, the responsibilities of AUPRs are quite similar to those of Urban Park Rangers ("UPRs"), a position one rank below AUPRs and one that defendants treat as non-exempt.  This, too, plaintiffs argue, supports a theory that, in treating the AUPRs as exempt from the FLSA, defendants recklessly disregarded the risk that denying these employees FLSA minimum wage and overtime pay was unlawful.  *See, e.g.*, Declaration of Marlena Poelz-Giga ¶ 22, First Declaration of James Reif, Ex. 74 (Dkt. 155-8 at 78) ("The vast majority of an AUPR's tour is spent doing exactly the same work as a UPR.  After muster and other administrative tasks are finished (usually no more than 30 minutes into the tour), AUPRs go out on patrol just like the UPRs.  While on patrol, AUPRs and UPRs perform the same tasks which include . . . enforcing park rules and regulations, issuing summonses, making arrests, arranging for medical care when needed, and numerous other public safety tasks.").  Plaintiffs also note that defendants' decision to change the classification of AUPRs to non-exempt on March 31, 2013 was unaccompanied by any change in their job duties.

14

It is unclear whether defendants continue to defend the earlier classification of the AUPRs as exempt under § 213(a)(1). As to willfulness, they posit that if a misclassification is found, the error was not arrived at recklessly. The record, however, is opaque as to how the defendants came to claim that exemption and whether that claim reflected any forethought or attention. Defendants have not pointed the Court to evidence revealing whether the defendants, in real time, had any basis for the distinction they drew between AUPRs and UPRs or for treating the AUPRs as outside the regulations, discussed above, limiting the scope of exemption. Given the sparse record as to defendants' decision-making, plaintiffs' colorable arguments about why treating the AUPRs as exempt recklessly disregarded the operative law, and the obligation to consider the evidence in the light most favorable to plaintiffs, the Court cannot grant summary judgment to defendants on the issue of willfulness. That issue is left for the factfinder at trial.

### 2. Equitable Tolling

Defendants also seek summary judgment on plaintiffs' claim that the FLSA statute of limitations was equitably tolled.

Equitable tolling is an extraordinary remedy that is appropriate "only in rare and exceptional circumstances." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quotation omitted). It applies where "a plaintiff has been prevented in some extraordinary way from exercising his rights." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). The issue is not "the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004). Equitable tolling is thus available if "despite all due diligence [the plaintiff] is unable to obtain vital information bearing on the existence of [his or her] claim." *Valdez ex rel.*

15

*Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) (quotation omitted).  The plaintiff

must have acted with all due diligence during the time period sought to be tolled and must

"prove[] that the circumstances are so extraordinary that the doctrine should apply."  *Zerilli-*

*Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003).

Here, plaintiffs pursue such tolling on two grounds.  The first is that defendants did not

post required FLSA notices.  Federal regulations require that "[e]very employer employing any

employees subject to the [FLSA]'s minimum wage provisions shall post and keep posted a notice

explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places."

29 C.F.R. § 516.4.  Defendants do not appear to dispute that these notices were not posted.  The

second is that defendants distributed an "Employee Handbook" to plaintiffs, *see* O'Connor Decl.,

Ex. SSS (May 2008 Parks Department Employee Handbook for Time & Leave Benefits), which

lists AUPRs among the positions that are not covered by the FLSA, *see id.* (Dkt 192-19 at 26–

28).  Plaintiffs argue these acts prevented plaintiffs from learning about their potential rights

under the FLSA, justifying equitable tolling.

The failure to provide an employee the notice required by the FLSA may be a sufficient

basis for tolling, "but only if that failure contributed to the employee's unawareness of [his or

her] rights."  *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 622–23 (S.D.N.Y. 2011)

(quotation omitted).  The record here does not permit such a finding.  On the contrary, on the

facts here, each plaintiff, with reasonable diligence, could have discovered a potential claim

under the FLSA.  First, each plaintiff had, before working as an AUPR, worked as a UPR, a

position that defendants treated as within the coverage of the FLSA.  *See* O'Connor Decl.,

Ex. TTT (print outs of the City employment history for each plaintiff).  Defendants thus had

notice of the existence of the FLSA framework and their potential rights under it.  Second,

16

plaintiffs were at all times represented in labor negotiations by an established municipal employee union, District Council 37, American Federation of State, County & Municipal Employees Union (AFS-CME), AFL-CIO, which had negotiated CBAs with defendants for many years, at least since 1995. *See, e.g.*, O'Connor Decl., Exs. C, D, UUU, QQQ, VVV, WWW, XXX (CBAs covering January 1, 1995 to July 2, 2017); *see also* Heron Decl. (attesting that the 2010–2017 memorandum of agreement reached in the 2015 collective bargaining negotiations was ratified by the union's membership on March 4, 2016 and became effective as a CBA at that time).[4]  The 1995–2001 CBA, the "Citywide Agreement," even referred to the FLSA, and addressed overtime and various rights provided by the FLSA. *See* O'Connor Decl., Ex. D, at 5–6 (in CBA, covering January 1, 1995, through June 30, 2001, Article IV ("Overtime") providing for overtime compensation).

Plaintiffs attest that, before filing this lawsuit, they were never represented by a lawyer regarding compensation as AUPRs or were specifically aware that, as AUPRs, they had rights under the FLSA. *See, e.g.*, Second Reif Decl., Ex. 95 ¶¶ 3, 5 (Dkt. 197-2 at 12–13) (Declaration of Henry Perez).  But those claims of unawareness do not address the key issue as to equitable tolling—whether plaintiffs could have discovered their rights had they acted with reasonable diligence.  Here, plaintiffs were represented by a large union that had negotiated their employment terms, were parties to a CBA that referenced overtime and the FLSA, and had enjoyed FLSA rights in a similar preceding position.  These gave plaintiffs, to an uncommon

---

[4] These CBAs were often negotiated retroactively, with effective dates often towards the end of the period to which they applied.  If a new CBA is not negotiated before the end of the period covered by the old CBA, then New York law provides that the terms of such public employee contracts remain in force past the period covered by the contract until a successor contract is agreed upon. *See* N.Y. Civ. Serv. Law § 209-a(1)(e).  This practice does not diminish the availability of plaintiffs' union as an avenue of recourse for plaintiffs to investigate their rights.

degree, ready "access to a means of acquiring knowledge of [their] rights." *See Patraker v. Council on Environment of New York City*, No. 02 Civ. 7382 (LAK), 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003) (representation by counsel during limitations period precludes equitable tolling) (quoting *Smith v. Am. President Lines, Ltd.*, 571 F.3d 102, 109–10 (2d Cir. 1978)). That plaintiffs did not, as claimed, alert to these rights before bringing suit does not mean that plaintiffs could not have done so with reasonable diligence. There is, for example, no claim that plaintiffs pursued with their union representatives why, unlike UPRs, they as AUPRs were exempt from overtime pay and other FLSA benefits.

The Employee Handbook's identification of AUPRs as a position outside the coverage of the FLSA does not avail plaintiffs either. That listing did not disable plaintiffs from investigating their rights and exploring legal remedies.[5] And, if an employer's determination that an employee is exempt from FLSA protection were sufficient to justify equitable tolling, such "would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime," inconsistent with the status of such tolling as an extraordinary remedy. *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008) (quoting *Patraker*, 2003 WL 22703522, at *2).

Accordingly, the Court holds that equitable tolling is unavailable here as a matter of law. Defendants are entitled to summary judgment on that issue.

### C.  Compensability of Donning and Doffing Under 29 U.S.C. § 203(o)

Defendants also seek summary judgment on whether FLSA § 203(o) made plaintiffs' donning and doffing non-compensable. Defendants note that CBAs have been in place between

---

[5] Far from obscuring the FLSA, the handbook discussed the FLSA, enumerating rights available to employees classified as covered by it. *See* O'Connor Decl., Ex. SSS (Dkt. 192-19 at 25–26).

the parties for more than 20 years, and that the issue of compensating AUPRs for donning and doffing has never been raised in collective bargaining.  Therefore, defendants argue, this non-compensation of AUPRs reflects a "custom or practice" under § 203(o), justifying defendants, under the caselaw, in not compensating plaintiffs for such activities during the period at issue here.  For several reasons, plaintiffs argue that § 203(o) is inapplicable.

In 1949, Congress amended the FLSA to add § 203(o).  It reads:

> Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).  "The object of § 203(o) is to permit collective bargaining over the compensability of clothes-changing time and to promote the predictability achieved through mutually beneficial negotiation."  *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 (2014).  The term "clothes" is to be given its ordinary meaning.  *Id.* at 877.

There is no claim here that AUPRs' donning and doffing time was excluded by the express terms of a collective bargaining agreement.  All relevant agreements have been silent on that point.  The issue instead is whether a "custom or practice" under such an agreement can be found under which time spent donning and doffing is to be excluded.

"As a definitional matter, 'custom' suggests an ongoing understanding with some continuity," and "[u]nwritten agreements concerning changing time have been held to constitute a 'practice' under a collective bargaining agreement."  *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir. 1994) (interpreting § 203(o)).  The course of collective bargaining negotiations can bear on the existence of a custom or practice.  A custom or practice not to compensate for changing time has been found in situations when a previously existing provision compensating

19

for changing time was deleted in collective bargaining, when an employer's policy of not compensating for changing time was "encompassed" by collective bargaining negotiations, or when a party abandoned a demand for compensation for changing time made in collective bargaining. *See id*.

None of those specific circumstances exists here. The parties' briefs on this point have therefore focused on a different issue: whether a "custom or practice" within the meaning of § 203(o) can arise through acquiescence—when, over the course of negotiations over a series of collective bargaining agreements, no party sought to disturb a longstanding practice with respect nonpayment for donning and doffing. No Second Circuit case is directly on point. But, as defendants emphasize, at least four other circuits have held that a custom or practice can thereby come to exist, on the grounds that § 203(o) serves "simply to restat[e] the well-established principle of labor law that a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence." *See, e.g.*, *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001) (custom or practice existed when change time was not compensated for more than 30 years and every CBA between plaintiffs and defendants was silent as to compensation for change time; a union president had informally mentioned such compensation during labor management meetings with defendants' representatives but the issue was never raised in formal collective bargaining) (citations omitted); *see also Anderson v. Cagle's Inc.*, 488 F.3d 945, 958–59 (11th Cir. 2007) (10-year period of non-compensation from a policy concerning non-compensation of clothes changing whether "written or unwritten" in place at the time a CBA was executed constituted custom or practice because "[a]bsence of negotiations cannot in this instance equate to ignorance of the policy. Rather, it demonstrates acquiescence to it"); *Allen v. McWane, Inc.*, 593 F.3d 449, 457 (5th Cir. 2010) ("as long as there

20

was a company policy of non-compensation for time spent changing for a prolonged period of time—allowing the court to infer that the union had knowledge of and acquiesced to the employer's policy—and a CBA existed, the parties need not have explicitly discussed such compensation when negotiating the CBA" to establish a custom or practice); *Franklin v. Kellogg Co.*, 619 F.3d 604, 617–18 (6th Cir. 2010) (19-year period of non-payment of donning and doffing under a CBA sufficient to establish a custom or practice); *Rosano v. Township of Teaneck*, 754 F.3d 177, 192–95 (3d Cir. 2014) (30 years of non-compensation for donning and doffing under governing CBAs sufficient to establish custom or practice).

Opposing this argument, plaintiffs urge the Court to reject these decisions, arguing that the Third Circuit's decision in *Turner* was wrongly decided and wrongly followed by the Fifth, Sixth, and Eleventh Circuits.  Plaintiffs emphasize an aspect the legislative history of § 203(o), specifically, a statement by Representative Christian A. Herter of Massachusetts, stating that the amendment was meant to apply when "the matter has been carefully threshed out between the employer and the employee and apparently both are completely satisfied with respect to their bargaining agreements."  95 Cong. Rec. H11210 (Aug. 10, 1949) (statement of Rep. Herter). Here, plaintiffs note, whether to compensate AUPRs for donning and dogging was not "threshed out" in collective bargaining.

Were this legal dispute dispositive, the Court would find with defendants.  The logic of the Third Circuit in *Turner* and the three Circuits to follow it is persuasive, there are no contrary precedents, and, under modern tools of construction, a statement by one representative on the House floor does not control a statute's meaning.  *See, e.g.*, *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 943 (2017) ("[F]loor statements by individual legislators rank among the least illuminating forms of legislative history.").

This case does not, however, present the paradigm addressed by *Turner* and progeny.  In those cases, labor and management negotiated a collective bargaining agreement against a shared premise that the FLSA applied to the employees in question.  In that context, the negotiating parties' silence during successive rounds of bargaining was fairly read as collective acquiescence to the practice of not compensating donning and doffing.  Here, in contrast, until March 31, 2013, defendants denied that AUPRs were covered by the FLSA.  Def. 56.1 ¶ 7.  There was thus, until that point, no occasion to calculate the hours AUPRs worked for the purposes of §§ 206 and 207 of the FLSA or any other FLSA provision, and therefore no occasion to engage with the subsidiary issue of whether time spent changing clothes counted towards overtime.  Under these circumstances, it is not persuasive to impute to the parties the reaching of a tacit understanding of how, were AUPRs covered by the FLSA, their time donning and doffing would be treated for overtime purposes.  Put differently, defendants cannot claim that a custom or practice was reached as to application of the FLSA while denying that the FLSA applied.

A separate issue is presented by the period since March 31, 2013.  In 2015, the parties negotiated a new CBA over 10–12 collective bargaining meetings.  In none was the topic of compensating AUPRs for donning and doffing raised, orally or in writing.  Def. 56.1 ¶ 14.  The Court has considered whether, from the point of the new CBA forward, there was, since March 31, 2013, acquiescence in the practice of not recognizing donning and doffing hours.  The Court holds there was not.  The period of asserted acquiescence here was far shorter than in *Turner* and the cases that followed it, in each of which the practice of not compensating workers for changing clothes persisted over multiple bargaining periods.  The pendency of this litigation during the 2015 collective bargaining further complicates the claim that the negotiating parties'

silence over donning and doffing bespeaks acquiescence; one or both parties may instead have deferred raising the issue pending resolution of the donning and doffing claims in this lawsuit.

Accordingly, the Court does not find a "custom or practice" within the meaning of § 203(o) existed at any period implicated by this lawsuit.  Defendants' motion for partial summary judgment on this issue is therefore denied.

### D.      Adequate Reporting of Overtime

Defendants also pursue summary judgment on plaintiffs' overtime claims as to those hours which defendants contend plaintiffs did not properly report.  Defendants claim that they had an established system for tracking employee overtime, and argue that this entitles defendants to summary judgment on overtime hours not properly reported.  Plaintiffs counter that employers are responsible under the FLSA for maintaining accurate employee time records, including for overtime, and that employers who have reason to know that employees are working overtime, as plaintiffs claim is so here, cannot disclaim responsibility for paying such overtime based on employees' failure to report it.  Plaintiffs are correct that summary judgment for defendants is unavailable on the record here.

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that [he or she] performed work for which [he or she] was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Kuebel*, 643 F.3d at 361 (citations omitted); *see also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.").  Under the FLSA, the employer bears the duty to maintain accurate records of its employees' hours, and that duty is non-delegable.  *Kuebel*, 643 F.3d at 363; *see also* 29 U.S.C. § 211(c) (requiring employers to "make, keep, and preserve such records" of employees' "wages, hours, and other conditions and practices of employment"); *Caserta v. Home Lines Agency, Inc.*,

273 F.2d 943, 946 (2d Cir. 1959) (Friendly, J.) ("The obligation is the employer's and it is absolute.  He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, and of appropriate payment, to the employee.  The employer at its peril had to keep track of the amount of overtime work by those of its employees . . . .") (quotation and citations omitted).  Therefore, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim [his or her] overtime hours."  *Kuebel*, 643 F.3d at 363; *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) (same); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) ("An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance.").

Whether an employer had actual or constructive knowledge of an employee's unpaid work is a question of fact.  *Holzapfel*, 145 F.3d at 521.  To withstand an employer's motion for summary judgment, an employee need not demonstrate exactly how much work was performed with the employer's actual or constructive knowledge.  *Kuebel*, 643 F.3d at 365.  And, "at summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference."  *Id.* at 362 (quotation and alteration omitted); *see also id.* at 364–65 (test "simply addresses whether there is a reasonable basis for calculating damages . . . .  It does not entitle an employer to summary judgment where the employee's estimates of [his or her] uncompensated overtime are somewhat inconsistent.").  "[I]t is possible for a plaintiff to meet this burden through estimates based on [his or her] own recollection."  *Id.* at 362.

Here, defendants claim that, since 2011, AUPRs were required to report any overtime they worked—whether before, after, or at otherwise non-compensable breaks during their tours of duty—on a web-based time tracking software called CityTime.  *See* O'Connor Decl., Ex. PPP ¶¶ 7–15 (Affidavit of Joseph Trimble, Dkt. 192-17 at 14–18).  (Prior to 2011, paper timecards were used to record overtime.  Def. 56.1 ¶¶ 21–22.)  Defendants claim that plaintiffs knew of CityTime system and used it to report and receive overtime.  *See* O'Connor Decl., Ex. LLL ¶ 5 (Declaration of Dr. Christopher Erath, Dkt. 192-16 at 34–81) (attesting to amount of overtime paid to plaintiffs between June 22, 2009 and June 29, 2013).[6]  Defendants further argue that they lacked actual or constructive knowledge that plaintiffs worked overtime beyond what they requested on CityTime.

Viewing the record in the light most favorable to plaintiffs, however, there is ample record evidence that defendants knew or had reason to know plaintiffs were working unreported overtime hours.  For example, Captain Benne McCants testified that he was "sure" that there were instances when AUPRs worked overtime but did not request it, McCants Dep. at 23, Reif Decl., Ex. 29 (Dkt. 155-4 at 12), and that there were instances in which AUPRs had to work through meal breaks, *id.*  In addition, various plaintiffs testified that they worked through their meal breaks but were told by supervisors not to request overtime for such hours because it would not be approved.  *See, e.g.*, Poelz-Giga Dep. at 130–31, 136, Reif Decl. Ex. 36 (Dkt. 155-4 at 65–67); Declaration of Domingo Sanchez, ¶¶ 11–12, Reif Decl., Ex. 75 (Dkt. 155-8 at 106–07) (attesting that Sanchez's supervisors were aware that he routinely worked "before and after my

---

[6] Plaintiffs dispute the attestations in the Erath Declaration, O'Connor Decl., Ex. LLL, contending, for example, that his calculations exclude data from a plaintiff in this case and include data for a former plaintiff who withdrew from this case.  Pl. 56.1 ¶ 32.  Plaintiffs also note that the calculations in the Erath Declaration are based on overtime paid under the relevant CBA, not under the FLSA.  *Id.*

scheduled tour" and "observed [him] working before and after [his] scheduled tour on a regular

basis" and that his supervisors knew that he "generally did not record the time [he] spent

working before and after [his] tour"). Opt-in plaintiff Poelz-Giga further testified that the reason

she did not report and request overtime pay for her work during meal breaks was that she had

been "told you would not get paid for working through your meal, and then once CityTime came

about, I believe that your time sheet wouldn't get approved if you put no meal in there, a meal

time had to be put in there." Poelz-Giga Dep. at 136, Reif Decl. Ex. 36 (Dkt. 155-4 at 67). She

testified that her supervisor—the captain—told her that time spent working through meals would

not be approved, causing her not to request such time; she worked through her meal breaks

because, she testified, "it was pretty much expected of you that certain things had to get done."

*Id.* at 136–37. She also testified "[w]e were not trained properly in CityTime and I think nobody

really knew how to do anything really in CityTime. Myself, my supervisor and my supervisor's

supervisor." *Id.* at 136.

There is thus a genuine dispute of fact of whether defendants had actual or constructive

knowledge that AUPRs were working unreported overtime.

Defendants argue that even if defendants knew of plaintiffs' unreported hours, under a

Sixth Circuit case, *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 875–76 (6th Cir.

2012), an employer need not compensate employees even for known overtime hours if the

employer had established a reasonable process for the employee to report the overtime but did

not do so. To the extent *White* is read to relieve the employer of its duty to maintain accurate

records of employee hours or to absolve the employer of liability for overtime hours of which it

was aware, it is inconsistent with the Second Circuit caselaw discussed above.

26

Accordingly, the Court denies defendants' motion for partial summary judgment on claims for overtime hours that defendants claim were not adequately reported. Whether defendants had actual or constructive knowledge of plaintiffs' unreported overtime work, and the extent of that work, must be determined at trial.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted in part and denied in part. Barring settlement, this case will now proceed to trial.

The Court directs the parties to confer, and, by October 13, 2017, to file a joint letter as to the anticipated future trajectory of this case. Assuming the parties report that the case is headed for trial, the parties should be prepared for the Court to set a schedule requiring the submission, in early November, of a Joint Pretrial Order and the other required pretrial filings set forth in the Court's Individual Rules.

The Clerk of Court is respectfully directed to terminate The New York City Department of Parks & Recreation as a defendant in this case.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 191.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 27, 2017
        New York, New York

27